GUARDIANSHIP OF CLAUS: CLAUS, Appellant, v. LINDE-
MANN, Guardian, and another, Respondents.

*No. 6. Argued November 24, 1969.—Decided December 19, 1969.*
(Also reported in 172 N. W. 2d 643.)

180

For the appellant there was a brief and oral argument by *L. William Connolly* of Milwaukee.

For the respondent guardian there was a brief by *R. J. Schimmel* and *George R. Schimmel,* attorneys, and *Arnold, Murray & O'Neill* of counsel, all of Milwaukee, and oral argument by *George R. Schimmel.*

ROBERT W. HANSEN, J. Several specific issues are raised on this appeal. All are to be considered against the general background or frame of reference that we deal here with the endeavor of a person placed under guardianship to terminate such guardianship. This court has held that since the appointment of a guardian over a person or a person's estate is a serious and significant court action,[1] the exacting jurisdictional requirements of ch. 319, Stats., dealing with appointment of guardians, must be met.[2] It follows that the same concern for compliance with the statutes and concern for the rights of the person placed under guardianship must be given to proceedings for termination of such guardianship.

[1] *Guardianship of Warner* (1939), 232 Wis. 467, 287 N. W. 803; *Guardianship of Welch* (1900), 108 Wis. 387, 84 N. W. 550.

[2] *Guardianship of Nelson* (1963), 21 Wis. 2d 24, 123 N. W. 2d 505.

*Jurisdictional Defect.*

Appellant here contended at the termination hearing that her absence from the original guardianship hearing constituted a jurisdictional defect and that the original appointment of the guardian was invalid. It is statutorily provided that the alleged incompetent be present at the guardianship hearing,[3] and this court recently has reaffirmed that the trial court at such a hearing must take affirmative steps to insure either that the alleged incompetent is present or that the presence of such person is not possible.[4]

The trial court here ruled that such challenge to the jurisdiction of the court in appointing the guardian could not be raised at a hearing on a petition for termination. This would limit the scope of the hearing on a petition for termination to the question of return to competency. As to the initial finding of incompetency, as made by a colleague on the bench, the trial court asks: "Now, by virtue of what authority does this court attempt to review or sit as an appellate court to the other branch's decision?"

The answer is that authority exists by virtue of the holding of this court in *Guardianship of Nelson.*[5] It is true that that case held that the question of the original court's jurisdiction may not be questioned at a hearing to settle the final account of the guardian. However, as to earlier opportunities to raise the question of jurisdictional defects, the court stated:

"This is not to say that the original determination of incompetency is not open to review. In addition to a direct appeal of the initial order, any interested party at any time during the guardianship may petition for a rehearing seeking revocation of the guardian-ward status. At this rehearing an attack may be made both upon the jurisdiction of the court making initial appoint-

---

[3] Sec. 319.08 (1), Stats.

[4] *Guardianship of Nelson, supra,* footnote 2.

[5] *Ibid.*

ment and upon the sufficiency of the evidence supporting a finding of incompetency." [6]

It is clear that at a rehearing the petitioner may seek a revocation of the guardianship due to defects in the original proceeding as well as a termination of the guardianship due to the change in competency of the ward. The reference to a petition ". . . seeking revocation of the guardian-ward status" must be read to include a petition for termination as well as petition for rehearing. Both may be brought at any time during the guardianship, and both are ". . . proceedings in which the previously adjudged incompetent has alleged that he is now competent." [7]

The reasoning of the *Nelson Case* in allowing challenges to the original court's jurisdiction on a rehearing applies as well to a petition for termination. It follows that the appellant was entitled to challenge the jurisdiction of the court which originally appointed the guardian over her person and estate at the hearing on her petition for termination.

### Proper pleading.

Respondent abandons the position of the trial court as to the right to challenge initial jurisdiction on a petition for termination in favor of claiming that such challenge must be clearly set forth in the petition for termination. This is a much closer question. The respondent argues that ". . . the issues to be brought to the attention of the court should be contained in the petition." Generally, this is the rule. However, we return to the starting blocks to emphasize that, in proceedings involving competency and guardianships, there must be an insistence that statutory procedures be strictly complied with and special concern shown for the

---

[6] *Id.* at page 29.

[7] *Guardianship of Colliton* (1969), 41 Wis. 2d 487, 491, 164 N. W. 2d 480.

rights of the person who is the subject of the competency hearing. While it is clear that the appellant was not present at the initial guardianship hearing and was not represented by a guardian *ad litem*, we do not deal here with whether there was a jurisdictional defect in the original proceeding. We deal only with whether or not the person then found to be incompetent had the right on her petition for rehearing to raise the issue of jurisdictional defect in the original proceedings. Here the petition for termination did include a prayer for ". . . such other and further relief as is just and equitable." Under the special situation here presented, we hold that this prayer for additional relief preserves the right to assert a jurisdictional defect in the original proceedings for appointment of a guardian. It certainly negatives any waiver of such right.

*Exclusion of deposition.*

On September 21, 1968, appellant's counsel conducted an adverse examination of the respondent-guardian. At the termination hearing on October 9, 1968, appellant's counsel called the respondent as an adverse witness. Thereupon appellant's counsel sought to introduce various portions of the adverse examination into evidence to impeach the testimony of the respondent. It then developed that the original transcript of the adverse examination proceedings had not been filed in court, as statutorily required.[8] At least it was not in the folder of the case as it would or should have been if timely filed. Both attorneys had copies, and there was a discussion as to accepting a copy in lieu of the original. The stipulation of counsel that this be done was not forthcoming, so appellant's counsel moved for a brief adjournment, presumably to locate or produce the missing original. Such motion was denied. Appellant now claims that the exclusion of the transcript was prejudicial error. To

[8] Sec. 887.10, Stats.

sustain such contention on its merits, the contents of the adverse examination would be material. Also, an offer of proof concerning such contents should have been made. Neither transcript nor offer of proof is in this record. In the absence of both, it is impossible to determine whether the error, if error there be, was prejudicial. We stop short of the arguments, pro and con, on the dispute as to admissibility of the adverse. However, we hold that it was an abuse of discretion for the trial court, under the situation here presented, to deny the motion for a brief adjournment, particularly so because of the reason given by the trial court for denying such motion. In denying the motion for an adjournment, the trial court stated:

*"Court.* Motion denied. I might add for the record, another reason for not granting the adjournment is the fact that what occurred from 1964, when the late husband passed away, until early 1967, is *so remote to the issues of this case now* that there is a high degree of probability that the entire adverse examination, as it affects that period of time, would have very little, if any, probative value *on the issues raised today."* (Emphasis supplied.)

The reference to remoteness in time and the issues "raised today" clearly relate to the trial court's position that return to competency was the sole issue before the court, and that any challenge to the original appointment of the guardian was not before the court at the termination hearing. Obviously, if this were so, events occurring up to the original appointment of the guardian would have little probative value. Since it is not so, there is at least a grave doubt as to whether all events preceding the original hearing are nonprobative. What is outside a narrow scope of inquiry may well not be outside a broadened area of concern. We see no way of separating the ruling on the motion from the reason stated for it. So to strike the reason as inappropriate, we reverse the ruling.

*Fee for appeal.*

The final issue raised on this appeal relates to the petition of the appellant for an allowance out of her estate for the costs and disbursements, as well as attorney's fees, involved in bringing this appeal. The trial court allowed costs and expenses to the amount of $350 out of the guardianship estate, but refused to make an allowance for attorney's fees. The record does not indicate the reason for such refusal. Appellant moved this court for an order directing the guardian to pay attorney's fees out of the guardianship estate. This motion was denied subject to renewal on this appeal. The motion has been renewed, and reasonable attorney's fees are once again requested.

In a fairly recent case, this court has held that attorney's fees incurred by the ward in a suit to challenge the status of incompetency may be necessaries under sec. 319.25, Stats., and hence payable out of the estate, stating:

"The true rule is that what constitute necessaries and reasonable prices depends upon the particular facts and circumstances of each case and is not necessarily determined solely by the nature of the services." [9]

There a trial court finding that legal services were not necessary was upheld, but here, particularly in view of the outcome of this appeal, it is equally clear that they are to be so considered. While the mere fact that the ward is unsuccessful at a hearing or on appeal is not to be the determining factor as to the necessity of legal services involved, a ". . . reasonable basis and hope for success" [10] are factors to be given weight. In the case

[9] *Guardianship of Hayes* (1959), 8 Wis. 2d 32, 37, 98 N. W. 2d 430.

[10] *Id.* at page 38; *see also* 41 Am. Jur. 2d, *Incompetent Persons*, p. 640, sec. 102, stating: "Attorneys' fees incurred in good faith in proceedings to restore the capacity of one previously adjudged to be incompetent have generally been held to be chargeable against such person or his estate as necessaries, whether or not the proceedings were successful."

before us, appellant appealed the portion of the trial court order denying a termination of the guardianship over her estate. Two issues of law were raised, and on both the essential position of appellant was sustained. Clearly the attorney's fees involved in taking this appeal are to be considered necessaries, to be allowed and paid out of the guardianship estate. On this point, the case is remanded with instructions to the trial court to fix and allow reasonable attorney's fees to be paid appellant's counsel out of the appellant's estate.

*By the Court.*—Order reversed and cause remanded for further proceedings consistent with this opinion.