Richard SCHAUL, Plaintiff-Appellant,

v.

Jeff KORDELL, Defendant-Respondent.

Court of Appeals

*No. 2008AP2571. Submitted on briefs April 23, 2009.*
*—Decided July 22, 2009.*

2009 WI App 135

(Also reported in 773 N.W.2d 454.)

105

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Guy K. Fish* of *Fish Law Offices*, Milton.

On behalf of the defendant-respondent, the cause was submitted on the brief of *John V. O'Connor* and *Robert I. DuMez* of *O'Connor, DuMez, Alia & McTernan, S.C.*, Kenosha.

Before Anderson, P.J., Snyder and Neubauer, JJ.

¶ 1. NEUBAUER, J. Richard Schaul commenced this defamation action against Jeff Kordell for implicating him in a report of elder abuse made under WIS. STAT. § 46.90 (2003–04).[1] Kordell counterclaimed based on § 46.90(4)(b)1.a. and (4)(c) which prohibit retaliation against anyone who has made a good faith report of material abuse, and § 46.90(4)(b)2.c., which gives the person who is subject to retaliation the right to commence an action for damages caused by retaliation. Schaul now appeals from a summary judgment dismissal of his defamation action. Schaul additionally appeals from a later judgment on Kordell's counterclaim which granted attorney fees to Kordell as damages under § 46.90(4)(b)2.c. We affirm the summary judgment in favor of Kordell which dismissed Schaul's

---

[1] All statutory references are to the 2003–04 version unless otherwise noted. Portions of WIS. STAT. § 46.90, including § 46.90(4)(c), were revised by 2005 Wis. Act 264 and 388. Because this action was filed under the previous version of the statutes, we address the issues on appeal within that framework.

defamation claim based on undisputed facts which established that Kordell's statements to the reporting agency were privileged. However, we reverse the trial court's later judgment granting attorney fees to Kordell because (1) the trial court erred in granting judgment absent a finding of retaliation and (2) § 46.90(4)(b)2.c. does not provide for the award of attorney fees. We therefore remand for further proceedings on Kordell's counterclaim for retaliation.

## FACTS AND PROCEDURAL HISTORY

¶ 2. The record reflects that in April 2003, the Walworth County Department of Human Services documented concerns regarding an elderly man, Herman Valencich, who is now deceased. The department noted information from (1) Valencich's caregiver, Geneva Lake Manor, that Valencich had inherited a large sum from his brother and (2) Jeff Kordell, Valencich's former neighbor, that the money had been put into Schaul's children's accounts. Schaul served as Valencich's power of attorney. The notes indicate that Kordell had notified Vicki Bergquist, ombudsman for the Wisconsin Board on Aging and Long Term Care, of the potential material abuse by Schaul.

¶ 3. On March 7, 2005, Schaul filed a complaint against Kordell alleging:

That during April, 2003, [Kordell] maliciously spoke of and concerning [Schaul] to another the following faults and defamatory words, to-wit: that [Schaul] was taking advantage of a gentleman named Herman Valencich and was putting this gentleman's monies into [Schaul's] power of attorney account and accounts in his children's name.

Schaul alleged that as a result, his "reputation was injured by these words to his damage." Kordell denied

108

the allegations and asserted, among other things, that all statements made by him "were both truthful and privileged." Kordell raised the following affirmative defense:

> [A]ll statements that [Kordell] made were made in good faith for the purpose of protecting an elderly gentleman that [Kordell] thought was being abused and that such actions are privileged pursuant to WIS. STAT. § 46.90 (and other State and Federal statutes and regulations aimed at protecting the elderly). Said statute provides that [Kordell] is entitled to collect all of his costs and attorneys fees in defending this action . . . .

Kordell requested the dismissal of Schaul's complaint on the merits.

¶ 4. On June 16, 2005, Kordell filed a counterclaim against Schaul pursuant to WIS. STAT. § 46.90(4)(b) alleging that Schaul had filed a retaliatory lawsuit in violation of § 46.90(4)(b)2.[2] Kordell claimed that § 46.90(4)(c) provides that no person may be held civilly liable for reporting elder abuse in good faith. He further alleged that the information Schaul provided to him regarding Valencich's finances would have led a reasonable person to suspect material abuse and that Schaul's action was filed in retaliation for Kordell's report made in good faith.[3] See § 46.90(4)(a)1.

---

[2] Kordell's counterclaim incorrectly alleged retaliation under WIS. STAT. § 46.95(4); however, no one disputes that the claim proceeded under WIS. STAT. § 46.90.

[3] On summary judgment, Kordell submitted deposition testimony setting forth his recollection of the statements made by Schaul: "The words that Mr. Schaul used were such that he was now the owner of the property [Valencich's residence] and that it was in his children's names . . . as [Valencich] was now in a nursing home." Kordell testified that he thought it might be "a

¶ 5. On October 27, 2005, Kordell filed a motion for summary judgment requesting dismissal of Schaul's suit on its merits on the grounds that Kordell is immune from civil liability for the alleged defamatory statements, pursuant to WIS. STAT. § 46.90(4)(c); the statements were not slander per se; and Schaul suffered no special damages.[4] Schaul opposed the motion and moved to amend his pleadings. The trial court, Judge Michael S. Gibbs presiding, denied Schaul's motion to amend and granted summary judgment to Kordell, dismissing Schaul's claim on the merits. The court ordered Kordell's counterclaim to proceed according to law.

¶ 6. The parties prepared to proceed to trial on Kordell's counterclaim for retaliation and damages. Kordell subsequently moved for an award of attorney fees, claiming that the issue of retaliation had been disposed of with the dismissal of the defamation ac-

---

little unusual . . . [t]hat the property was no longer [Valencich's]." In speaking to Bergquist, Kordell was "just expressing concern" and "repeated the words that Mr. Schaul mentioned to me, that [Valencich's] estate now belonged to him and his children."

[4] Kordell's affidavit in support of his motion states:

> All of the statements I made during the conversations I had with the representatives of the Wisconsin "ombudsman," and any conversations I may have had with a representative of Walworth County Department of Social Services, were made in good faith, based on my honest beliefs, and were motivated by my sincere concern for the well-being of Herman Valencich. I bore no malice or ill-will toward Richard Schaul, sought nothing for myself, and believed that what I was doing was my moral duty, as a citizen.

We note that the Board on Aging and Long Term Care of the state of Wisconsin filed an amicus curiae brief in support of Kordell's motion for summary judgment which was reviewed by the trial court but did not impact its ruling.

tion.[5] Schaul argued that retaliation remained at issue and that the jury would also need to make a determination as to "good faith." On August 28, 2007, the trial court, again Judge Gibbs presiding, entered a decision and order setting forth the matters to be tried before a jury: good faith and retaliation, with damages to be addressed only after a jury determination on those issues.

¶ 7. The matter was then scheduled for trial before Judge John R. Race. The parties again briefed the remaining issues for trial on Kordell's counterclaim. On May 6, 2008, the trial court issued a memorandum decision setting forth the history of the proceedings before narrowing the issues for trial to one: attorney fees. Following a trial to the court on August 26, 2008, the court awarded judgment for damages to Kordell in the amount of $42,744.37. The trial court later denied Schaul's motion for reconsideration, and he now appeals.

## DISCUSSION

### *Applicable Law*

¶ 8. Reports of elder abuse are governed by Wis. Stat. § 46.90. Pursuant to § 46.90(4)(a)1.:

Any person may report to the county agency or to any state official, including any representative of the office

---

[5] As this matter proceeded, Schaul appealed the trial court's order granting summary judgment in favor of Kordell on his defamation claim. In an order dated March 23, 2006, we dismissed Schaul's appeal on grounds that, in light of the pending counterclaim on retaliation, the entire matter had not been disposed of in litigation, *see* Wis. Stat. § 808.03(1), and the appeal was premature.

111

of the long-term care ombudsman . . . that he or she believes that abuse, material abuse or neglect has occurred if the person is aware of facts or circumstances that would lead a reasonable person to believe or suspect that abuse, material abuse or neglect has occurred. The person shall indicate the facts and circumstances of the situation as part of the report.

Under § 46.90(4)(c), "No person may be held civilly or criminally liable or be found guilty of unprofessional conduct for reporting in good faith under this subsection." Under § 46.90(4)(b)1.a. and 2.c., "No person may discharge or otherwise retaliate or discriminate against any person for reporting in good faith under this subsection," and "[a]ny person . . . who is retaliated or discriminated against . . . may commence an action in circuit court for damages incurred as a result of the violation."

*Standard of Review*

¶ 9.    The primary issue on appeal is whether the trial court properly granted summary judgment, both as to Schaul's initial claim and Kordell's counterclaim. The grant or denial of a motion for summary judgment is a matter of law that this court reviews independently. *Torgerson v. Journal/Sentinel, Inc.*, 210 Wis. 2d 524, 536, 563 N.W.2d 472 (1997). As such, we review a summary judgment without deference to the trial court, but benefiting from its analyses. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 314–15, 401 N.W.2d 816 (1987). Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment

112

as a matter of law." WIS. STAT. § 802.08(2). Schaul challenges the trial court's grant of summary judgment with respect to the issues of good faith, retaliation, and attorney fees. We address each of these issues in turn.

*Schaul's Defamation Claim*
*(The trial court properly granted summary judgment in favor of Kordell, dismissing Schaul's defamation action.)*

■

¶ 10.    Schaul first challenges the trial court's grant of summary judgment in favor of Kordell on his defamation claim. The elements of a defamatory communication are:

> (1) a false statement; (2) communicated by speech, conduct or in writing to a person other than the person defamed; and, (3) the communication is unprivileged and tends to harm one's reputation so as to lower him or her in the estimation of the community or to deter third persons from associating or dealing with him or her.

*Torgerson,* 210 Wis. 2d at 534 (citation omitted); *see also* WIS JI-CIVIL 2500 (2003). In support of his defamation claim, Schaul alleged that (1) Kordell "maliciously spoke of and concerning [Schaul] to another the following faults and defamatory words, to wit: that [Schaul] was taking advantage of . . . Herman Valencich and was putting this gentleman's monies into [Schaul's] power of attorney account and accounts in his children's name;" (2) the statements were false; and (3) his reputation was damaged as a result. In his answer, Kordell denied that the statements were defamatory, instead asserting that they were both truthful and privileged. As an affirmative defense, Kordell cited to

the privilege afforded to his good faith allegations under WIS. STAT. § 46.90. The trial court granted summary judgment in favor of Kordell based on its finding that Schaul's complaint failed to state a cause of action for defamation, specifically it failed to identify any specific damages or allege any statements that were per se slanderous.[6]

¶ 11.  Kordell's motion for summary judgment addressed the insufficiency of Schaul's defamation claim, namely (1) the absence of evidence that Kordell's statements were not entitled to the privilege extended to elder abuse reports made in good faith under WIS. STAT. § 46.90(4)(c); (2) the failure to allege any statements made by Kordell that could be considered slanderous; and (3) the failure to allege damages. In examining the affidavits, we conclude that Kordell established a prima facie case for summary judgment based on the privilege afforded good faith reports under § 46.90(4)(c). *See*

---

[6] In granting summary judgment on Schaul's defamation claim, the trial court stated:

In looking at the motion, first of all, for summary judgment, I am to determine if there is a cause of action stated in the Complaint, and I think there was kind of a problem there because it doesn't really allege any sort of specific damages or that any statements made damaged [Schaul], and it doesn't allege that anything stated was any kind of . . . slander, per se, or by defamation, per se, alleging criminal actions.

. . . .

In looking at [WIS. STAT. §] 46.90(4)(a)1. and (c), I find that [Kordell] did have a privilege; and that (c) specifically says no person may be held civilly or criminally liable or be found guilty of unprofessional conduct for reporting in good faith under this subsection, and the report was made specifically to an agency that exists to take these kinds of report.

So I will find that [Kordell] is entitled to judgment as a matter of law because there's an absolute privilege there.

114

*Hoida, Inc. v. M&I Midstate Bank,* 2006 WI 69, ¶ 16, 291 Wis. 2d 283, 717 N.W.2d 17 (if the complaint and answer are sufficient to join issue, "we examine the moving party's affidavits to determine whether they establish a prima facie case for summary judgment"). The onus was then on Schaul, as the opposing party, to submit affidavits as to material facts in dispute or inferences from undisputed facts that would entitle him to a trial. *See id.* He simply failed to do so.

¶ 12. For example, in Schaul's responses to Kordell's interrogatories, submitted with Kordell's motion for summary judgment, Schaul identifies the defamatory statements as being made to Vicki Bergquist of the Board on Aging and Long Term Care, and Melissa Fowlkes, who is with the Walworth County Department of Social Services—both subject to the privilege under WIS. STAT. § 46.90. In response to Kordell's inquiry as to the exact defamatory words, Schaul refers to and attaches the notes from the Board on Aging and Long Term Care that Kordell "has said the [money] has been put into POA Richard Schaul's children's accounts . . . . Caller wants someone else to handle [Valencich's] finances as he feels his best interests aren't being met." In responding to Kordell's inquiry as to what Valencich assets had been transferred to Schaul or his family, Schaul lists the Valencich residence valued at $135,593.70 and cash gifts to seven family members in the amount of $1,625 per recipient, essentially bearing out the facts underlying Kordell's concern, whether warranted or not. In sum, Schaul's interrogatory answers lend support to Kordell's assertion that he was not being untruthful and that he was simply expressing an opinion. There is nothing in Schaul's summary judgment submissions to indicate that Kordell's statements to the Board on Aging and Long Term Care were made in bad faith.

115

¶ 13. Therefore, not only did Schaul fail to identify any defamatory statements in his summary judgment submissions, but the statements he did raise were made in the context of Wis. Stat. § 46.90(4)(a)1. and (c), which protect those persons who report elder abuse in good faith.[7] Schaul's defamation claim therefore failed to satisfy the third element of defamation—that the false statement is made during unprivileged communication. *See Torgerson*, 210 Wis. 2d at 534; Wis JI-Civil 2500 (2003).

¶ 14. Namely, in defense of the statements relied on by Schaul in his defamation action, Kordell alleged in his pleadings that "all statements that [he] made were made in good faith." Kordell's summary judgment submission specifically addressed Kordell's good faith and, as Kordell correctly observes, "his good faith was uncontroverted." Schaul's summary judgment response raised nothing to refute Kordell's good faith report. As such, "good faith" was not a material fact in dispute. *See Kenefick v. Hitchcock*, 187 Wis. 2d 218, 224, 522 N.W.2d 261 (Ct. App. 1994) (the mere allegation of a factual dispute will not defeat an otherwise properly supported motion for summary judgment). While Schaul argues on appeal that he is entitled to prove an absence of good faith as part of Kordell's counterclaim for retaliation, the trial court's grant of summary judgment on Schaul's defamation claim disposed of the good faith issue under Wis. Stat. § 46.90(4), and is thus applicable to the claim

---

[7] Schaul later moved to amend his pleadings to include allegedly defamatory statements Kordell made to a neighbor, Michael Wecker, which would fall outside the scope of Wis. Stat. § 46.90. The trial court denied Schaul's motion to amend the pleadings, and Schaul does not challenge this portion of the trial court's ruling on appeal.

under § 46.90(4)(b)1.a.[8] *See* § 46.90(4)(b)1.a. ("No person may discharge or otherwise retaliate or discriminate against any person for reporting in good faith *under this subsection.*") (Emphasis added).

¶ 15.  We conclude that Schaul's failure to assert any facts to support a finding of bad faith on Kordell's part resulted in a concession that Kordell was acting in good faith at the time he made the elder abuse report to Bergquist and thus his statements were entitled to protection or privilege under WIS. STAT. § 46.90(4)(c). We therefore uphold the trial court's grant of summary judgment resulting in the dismissal of Schaul's defamation claim. *See Transportation Ins. Co., Inc. v. Hunzinger Constr. Co.*, 179 Wis. 2d 281, 291–92, 507 N.W.2d 136 (Ct. App. 1993) (summary judgment is appropriate when sufficient time for discovery has passed and the party asserting a claim on which it bears the burden of proof at trial has failed to demonstrate the existence of an element essential to that party's case).

*Kordell's Counterclaim for Retaliation*
*(The trial court erred in granting summary judgment on the issue of retaliation.)*

¶ 16.  Schaul next challenges Judge Race's interpretation of the earlier grant of summary judgment dismissing Schaul's defamation claim as resolving the issue of liability on retaliation, leaving reasonable attorney fees as the only factual issue to be resolved.

---

[8] While Schaul contends that the trial court's discussion of an "absolute privilege" indicates that there was no good faith finding, our de novo review of the record confirms the trial court's conclusion that Kordell was privileged to make the report because his showing of good faith was undisputed.

117

Significantly, neither party had moved for a summary judgment liability determination on Kordell's retaliation claim under WIS. STAT. § 46.90(4)(b)2.c. The trial court's memorandum decision narrowing the issue for trial to attorney fees made no finding as to liability for retaliation, presumably reasoning that Judge Gibbs' finding of "good faith" was sufficient to establish retaliation. A finding of retaliation must be made before addressing Kordell's damages.

¶ 17. Both parties recognize that WIS. STAT. § 46.90 does not define "retaliation." Citing to WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1938, 1895 (1976), Kordell suggests the common definition of retaliate: "to return the like for: repay or requite in kind (as in injury)" and "to put or inflict in return," usually implying a "paying back in exact kind, often vengefully." Schaul, while not suggesting a definition of retaliation, argues that it does not include a "lawsuit equals retaliation standard." We agree. Schaul's defamation action was filed prior to the court's finding that Kordell acted in good faith. Thus, it is possible that Schaul filed his defamation action believing that Kordell acted in bad faith in reporting Schaul's possible involvement in elder abuse.

█

¶ 18. While the grant of summary judgment in the defamation case may be relevant to a finding of retaliation, that judgment in and of itself does not resolve the issue of retaliation in Kordell's counterclaim as a matter of law.[9] As Judge Gibbs noted in his August

---

[9] In the opinion and order dismissing Schaul's appeal from the trial court's grant of summary judgment as premature, we noted that the parties had more to resolve regarding the counterclaim than simply attorney fees. We observed that

28, 2007 decision regarding the issues for trial on Kordell's counterclaim, the trial court "did not make a specific finding of retaliation by [Schaul] during the granting of summary judgment; therefore, that issue needs to be tried by a jury."[10] In short, the ruling on good faith did not resolve the counterclaim—that the lawsuit was retaliatory or was not pursued for the purpose of an adjudication on the merits. Based on our review of the record, we agree that the issue of retaliation remains undecided.

### Attorney Fees

¶ 19.  As a final matter, Schaul challenges the trial court's award of attorney fees to Kordell. Schaul argues that "Judge Race's written decision . . . did not set forth any findings of fact nor the conclusion of law that damages under WIS. STAT. § 46.90(4)(b)2.c. embodied reasonable attorney fees." Section 46.90(4)(b)2.c. provides in relevant part:  "Any person . . . who is retaliated or discriminated against in violation of [WIS. STAT. § 46.90(4)(b)1.a.] may commence an action in circuit court for damages incurred as a result of the violation." Kordell argues that, while not explicitly provided for under § 46.90(4)(b)2.c., attorney fees are recoverable as

"there has been no finding of retaliation . . . . The litigation continues between the parties on the counterclaim." *See Schaul v. Kordell*, 2006AP491, unpublished slip op. at 2 (WI App March 23, 2006).

[10] We note that Judge Gibbs' decision also permits Schaul to defend against the retaliatory charges by arguing that Kordell's statements were not made in good faith. However, for the reasons discussed in the body of this opinion, we conclude that the issue of "good faith" was resolved in the trial court's earlier grant of summary judgment.

119

damages resulting from the statutory tort of retaliation. We disagree.[11]

¶ 20.    Courts in Wisconsin may direct a person or entity to pay another's attorney fees only in limited circumstances. *Community Care Organization v. Evelyn O.*, 214 Wis. 2d 434, 437, 571 N.W.2d 700 (Ct. App. 1997). In *Evelyn O.*, we explained that "[t]his so-called 'American rule' holds that 'with the exception of those attorneys' fees incurred in third-party litigation caused by the party from whom fees are sought, attorneys' fees may not be awarded unless authorized by statute or by a contract between the parties.' " *Id.* (citing *Milwaukee Teacher's Educ. Ass'n v. Milwaukee Bd. of Sch. Dirs.*, 147 Wis. 2d 791, 796–97, 433 N.W.2d 669 (Ct. App. 1988)). While the Wisconsin Supreme Court has modified the American rule in limited circumstances, such as cases under the Wisconsin Fair Employment Act, *see Watkins v. LIRC*, 117 Wis. 2d 753, 760–61, 765, 345 N.W.2d 482 (1984), it has also forcefully reminded lower courts that attorney fees are not recoverable unless expressly provided for by statute. *Milwaukee Teacher's Educ. Ass'n*, 147 Wis. 2d at 796–97 (citing *Kremers-Urban Co. v. American Employers Ins. Co.*, 119 Wis. 2d 722, 744–47, 351 N.W.2d 156 (1984) (rejecting the argument that the Uniform Declaratory Judgments Act, Wis. Stat. § 806.04(10), permitted an award of

---

[11] Although we need not reach this issue in light of our determination that a finding as to retaliation must be made before determining damages, we nevertheless choose to address it insofar as it may impact Kordell's decision as to how to proceed on remand. *See State ex rel. Jackson v. Coffey*, 18' Wis. 2d 529, 533, 118 N.W.2d 939 (1963) (issues briefed may be considered if they are likely to recur on remand even though other issues are dispositive of appeal).

attorney fees by authorizing courts to "make such award of costs as may seem equitable and just")).

¶ 21. Here, Kordell's retaliation claim, arising under Wis. Stat. § 46.90(4)(b)2.c., does not fall under any exception to the American rule. While Kordell argues that the legislature intended the recovery of attorney fees as "damages" because retaliation is a tort, like the tort of insurer "bad faith" addressed in *DeChant v. Monarch Life Ins. Co.*, 200 Wis. 2d 559, 547 N.W.2d 592 (1996), he overlooks that a retaliation claim under Wis. Stat. § 46.90 arises under statute, not common law. Moreover, *DeChant* involved the "unique" first-party tort of insurer bad faith arising from a special duty imposed as a consequence of the insurance contractual relationship. *DeChant,* 200 Wis. 2d at 570. Kordell's reliance on *Byrnes v. Metz*, 53 Wis. 2d 627, 193 N.W.2d 675 (1972), is equally misplaced. *Byrnes* involved the recovery of damages under an injunction bond. *Id.* at 630. This process is now governed by Wis. Stat. § 813.07 (2007–08) which sets forth the procedure for assessing damages and recovering costs incurred as a result of an injunction. Here, the statute governing Kordell's action does not provide for the recovery of attorney fees.

■

¶ 22. In sum, Kordell has provided no applicable authority for an exception to the well-established rule that the prevailing litigant is not entitled to collect attorney fees from the opposing party as damages or costs. *See Gorton v. Hostak, Henzl & Bichler, S.C.*, 217 Wis. 2d 493, 510–11, 577 N.W. 2d 617 (1998); Restatement (Second) of Torts, § 914(1) (2009) ("The damages in a tort action do not ordinarily include compensation for attorney fees or other expenses of litigation.").

¶ 23. We further observe that the legislature's knowledge of this general rule regarding attorney fees

is evidenced in another provision of WIS. STAT. § 46.90. Pursuant to § 46.90(6)(c)3., an individual who incurs damages as a result of a violation of the confidentiality provisions in § 46.90(6) may, in an action to enjoin or compel compliance, "seek damages" and "may recover costs and reasonable actual attorney fees as may be incurred in the action, if he or she prevails."[12] However, neither provision relating to retaliation, § 46.90(4)(b)2.c. or 46.90(4)(b)1.c., provides for the recovery of attorney fees.[13] *See Kremers-Urban*, 119 Wis. 2d at 746 ("Because there are statutes which specifically provide for attorney's fees, we cannot imply the power to award fees from statutes.") Indeed, we note that the drafting history of § 46.90(4)(b)2.c. indicates that an earlier proposal contained language which permitted recovery of attorney fees and costs. However, that language was crossed out prior to the final passage of the bill.[14] *See State ex rel. Kalal v. Circuit Court*, 2004 WI 58, ¶ 51, 271 Wis. 2d 633, 681 N.W.2d 110 (legisla-

[12] Since this action was filed, WIS. STAT. § 46.90(6)(c)3. has been amended and renumbered as WIS. STAT. § 46.90(9)(c) by 2005 Wis. Act 388, § 79; however, the amendments do not impact our analysis.

[13] To the extent the legislature intended to effect financial consequences for retaliation, it explicitly did so via damages and penalties. WISCONSIN STAT. § 46.90(4)(b)1.c. provided: "Any person who violates this subdivision may be fined not more than $1,000 or imprisoned for not more than 6 months or both."

[14] The drafting record indicates that the bill as originally introduced allowed only for damages. Inserted amendments to WIS. STAT. § 46.90(4)(b)2.c. subsequently provided for "damages incurred as a result of the violation [retaliation] *together with punitive damages, court costs, and reasonable actual attorney fees.*" (Emphasis added.) The emphasized language was later crossed out, leaving only recovery for damages. *See* Drafting Record of 1997 WIS. ACT 131, available at Legislative Reference Bureau, Madison, WI.

tive history is sometimes consulted to confirm a plain-meaning interpretation); *see also id.*, ¶ 69 (Abrahamson, C.J. concurring) (drafting records are by-products of the drafting process, may indicate legislative intent, and have often been used by courts).

¶ 24.  Finally, insofar as Kordell contends that the recovery of attorney fees flows as a matter of law from a determination on the merits of good faith reporting, we note that had the legislature intended that result, it would have enacted a fee-shifting statute. It did not do so. We therefore reject Kordell's contention that once the court found that his report was privileged, he was automatically entitled to attorney fees as "damages" for retaliation under WIS. STAT. § 46.90(4)(b)2.c.

¶ 25.  In short, our purpose is to "faithfully give effect to the laws enacted by the legislature." *Warehouse II, LLC v. DOT*, 2006 WI 62, ¶ 14, 291 Wis. 2d 80, 715 N.W.2d 213 (citation omitted). Given the well-established rule on attorney fees and the absence of an expressed statutory provision providing for attorney fees, we conclude that Kordell, if he prevails on his retaliation claim, is not entitled to attorney fees as part of the damages determination.[15]

---

[15] Kordell contends that the recovery of attorney fees is required because it fulfills the purpose of the statute which is to provide protection for whistle-blowers seeking protection against elder abuse. While that may be so, we cannot rewrite clear language to meet Kordell's desired construction of it. *See La Crosse Lutheran Hosp. v. La Crosse County*, 133 Wis. 2d 335, 338, 395 N.W.2d 612 (Ct. App. 1986) (If a statute fails to cover a particular situation, and the omission should be cured, the remedy lies with the legislature, not the courts.); *see also Wood v. City of Madison*, 2003 WI 24, 38, 260 Wis. 2d 71, 659 N.W.2d 31 (the solution to a public policy problem lies with the legislature, not the court).

## CONCLUSION

¶ 26.   We conclude that the trial court's dismissal of Schaul's defamation claim on summary judgment is supported by the record. We further conclude that the dismissal of Schaul's claim on the grounds that Kordell's statements were privileged under WIS. STAT. § 46.90(4)(c) necessarily encompassed a finding of good faith. However, Kordell's counterclaim does necessitate a finding as to retaliation and, on that issue, we remand for further proceedings. Depending on the finding as to retaliation, a determination as to damages, consistent with this opinion, may follow.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.